Frank Bazadier
PO BOX 861503
Los Angeles CA 90086
323 493 8089 ph
323 210 7073 fax
email fbazadier@aol.com

PLAINTIFF IN PRO PER

U.S. DISTRICT COURT
**N.D. OF N.Y.**
**FILED**

MAR 2 9 2010

LAWRENCE K. BAERMAN, CLERK
ALBANY

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANK BAZADIER | ) CASE NO. 1:09CV00990 |
| | ) |
| Plaintiff | ) PLAINTIFF'S RESPONSE TO |
| | ) DEFENDANT'S MOTION TO DISMISS |
| | ) PURSUANT TO FRCP 12(b) AND 12(b)(6) |
| v. | ) |
| | ) |
| JOHN J. McALARY, in his official capacity | ) |
| as the Executive Director of the New York | ) |
| Board of Law Examiners. | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

1

## TABLE OF CONTENTS

2

3

**THIS COURT HAS SUBJECT MATTER JURISDICTION UNDER FEDLMAN**...........1

4

5

6

**PLAINTIFF HAS PLED A COMPLAINT BY WHICH THIS COURT CAN GRANT RELIEF THEREFORE HEIGHTEN SCRUTINY REVIEW IS APPLICABLE TO PLAINTIFF'S CASE-IN-CHIEF** .............................................................................................4

7

8

9

**THE RATIONAL BASIS TEST IS INAPPLICABLE TO PLAINTIFF'S CASE-IN-CHIEF** ...................................................................................................................14

10

11

**IN CONCLUSION** ...................................................................................22

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAZADIER V. McLARY 09-CV-990 U.S. DISTRICT COURT FOR THE NORTHER DISTRICT OF NEW YORK

**THIS COURT HAS SUBJECT MATTER JURISDICTION UNDER FEDLMAN**

Plaintiff has no objection to the line of cases cited by the Defendant regarding this court's first obligation to determine if it has subject matter jurisdiction. Therefore accompanied with Plaintiff's responding papers, which are before the court, is Plaintiff's motion to dismiss the seven named Defendants of the New York Court of Appeal per the holding of <u>D.C. COURT OF APPEALS v. FELDMAN</u>, 460 U.S. 462 (1983). In *Feldman* the Supreme Court stated:

> The remaining allegations in the complaints, however, involve a general attack on the constitutionality of Rule 461 (b)(3). See n. 3, supra. The respondents' claims that the rule is unconstitutional because it creates an irrebuttable presumption that only graduates of accredited law schools are fit to practice law, discriminates against those who have obtained equivalent legal training by other means, and impermissibly delegates the District of Columbia Court of Appeals' power to regulate the bar to the American Bar Association, do not require review of a judicial decision in a particular case. The District Court, therefore, has subject-matter jurisdiction over these elements of the respondents' complaints.

Upon Plaintiff amending his complaint-removing allegation(s) 6, 8, 11, 12, 17, and specifying in the 2nd Prayer for relief, that said prayer is only applicable to John McLary in his official capacity as Executive Director of the Board of Law Examiners (hereafter BOLE), this court is hereby empowered to hear Plaintiff's matter because it is a general attack on the unconstitutional exclusion of Plaintiff based on his protected speech activities on the part of the BOLE imposing the New York Court of Appeals Rule(s) 520.5(a) and all sections of 520.3 (hereafter NYCRR). Therefore Plaintiff's original complaint, and certainly Plaintiff's amended complaint are not "inextricably intertwined" with state judicial proceedings like the erroneous cases cited by the Defendant (<u>Patmon v. Michigan Supreme Court</u> ,224 F.3d. 504, <u>Musslewhite v. The State Bar of Texas</u>, 32 F.3d. 942, <u>Partin v. Arkansas State Board of Law Examiners</u>, 863 F. Supp. 924), all

previously mentioned cases cited by the Defendant arose from each particular litigant being disciplined by their respective state bar association, and thus these disciplined attorneys federal complaints were not genuine constitutional attacks on their respective state bar associations; these attorney subsequent federal complaints, merely sought to have the district court act as a court of appeals in order to second guess their states high court disciplining the attorney in the first instance, which is completely inconsistent with *Feldman*, and factually no relationship to Plaintiff's genuine constitutional attack on the BOLE administering the NYCRR discriminatory admission rules.

In <u>Lowrie v. Goldenhersh</u> 716 F.2d.401, 407, the court noted "Lowrie's complaint must be **sifted** to see if the general may be separated from the personal. As noted in *Feldman*..." The *Lowrie* court went on to say:

> There is, therefore, considerable merit to the arguments of the defendants, but the intertwining is not so inextricable, nor the waiver allegations so predominant as to make the general constitutional challenges unreachable by the district court. In our view, Lowrie's complaint under *Feldman* may be considered, apart from all the surplusage, as a general attack on the constitutionality of the rule sufficient to give the district court jurisdiction and to defeat the jurisdictional challenge of the defendant's Fed.R.Civ.P. 12(b)(1) motion to dismiss.

Therefore per *Lowrie*, it would seem, even if Plaintiff did not move to dismiss the seven Appellate Justices, that this court would still have the requisite Federal Question Jurisdiction to hear Plaintiff's matter, because this court can surely *sift* through Plaintiff's complaint and rightfully determine that Plaintiff is only seeking to remedy the NYCRR unconstitutional exclusion of Plaintiff's opportunity to sit for the New York Bar Exam based on Plaintiff's speech and association activities.

In the first footnote offered by the Defendant, he claims that the rules at issue which unconstitutionally exclude a licensed attorney in good standing from merely taking the New York

1 | Bar exam, are rules of the New York Court of Appeal, and not the BOLE, thus Plaintiff's suit
2 | would be barred by the *Feldman* decision. However even assuming the Defendant's is right as to
3 | where the discriminatory rules originated, the decision in Grendell v. The Ohio Supreme Court,
4 | 252 F.3d. 828, 836 is controlling, the court held:

5 | ....This is because a general constitutional challenge would not require a district court "to
6 | review a final state-court judgment in a judicial proceeding"; rather, the "district court may
7 | simply be asked to assess the validity of a rule promulgated in a non-judicial proceeding."
8 | In the Defendant's's first footnote, the Defendant states "The rules at issue are those of the New
9 | York Court of Appeals....The Board has promulgated rules and they are found at...," therefore
10 | based on *Grendell*, and the following language found in *Musslewhite*, at page 945:

11 | The *Feldman* rule, then, is as follows. The federal courts do have subject matter
12 | jurisdiction over *general challenges to state bar rules*; **promulgated** by state courts in
13 | non-judicial proceedings, which do not require review of a final state-court judgment in a
14 | particular case.

15 | Therefore per *Grendell* and *Musslewhite*, Plaintiff's case would not be barred by the *Feldman*
16 | rule, because Plaintiff has no interest in attacking the New York Court of Appeals denial of his
17 | waiver application, Plaintiff's attack is squarely based on NYCRR rules promulgated by the
18 | BOLE, which is a wholly non-judicial proceeding. Lastly, since this Plaintiff still has a strong
19 | desire to sit for the New York Bar Exam, and Plaintiff's amended complaint in no way offends
20 | the *Feldman* doctrine, Plaintiff's complaint is analogous to the complaint found in Dubuc v.
21 | Michigan Board of Law Examiners 342 F.3d. 610, where the court noted:

22 | Dubuc does not seek a declaration that defendants violated his rights with regard to the
23 | denial of his 1998 Bar application, nor does he seek to have the denial of his 1998
24 | application overturned or purged. Instead, the relief he seeks relates only to his rights with
25 | regard to reapplying for admission to the Bar. *Cf. Patmon,* 224 F.3d at 506 n. 2
26 | ("Although plaintiff's suspension has run its course, and he was eligible as of April 6,

27 |

28 |

1          1998 to seek reinstatement, plaintiff has not done so."). There has been no state court

2          judgment with regard to his rights to reapply for admission to the Bar, and, therefore,

3          Dubuc is not seeking a review of any state court judgment in contravention of the *Rooker-*

4          *Feldman* doctrine.

5    Therefore based upon the above authority surrounding the *Feldman* decision, coupled with

6    Plaintiff's amended complaint,  this court certainly has the requisite subject matter jurisdiction to

7    hear Plaintiff's matter, and therefore the Defendant's 12(b)(1) request for dismissal should be

8    denied.

9

10   **PLAINTIFF HAS PLED A COMPLAINT BY WHICH THIS COURT CAN GRANT**

11   **RELIEF THEREFORE HEIGHTEN SCRUTINY REVIEW IS APPLICABLE TO**

12   **PLAINTIFF'S CASE-IN-CHIEF**

13

14   Plaintiff's amended complaint has alleged an infringement on his fundamental rights-The BOLE

15   is administering NYCRR statutes that prefer the speech activities of one class of Juris Doctorates

16   over another class of Juris Doctorates in violation of Plaintiff's First and Fourteenth

17   Amendments to the United States Constitution. Thus Plaintiff has assembled a collection of cases

18   where by federal litigants challenged state actors for infringing on their speech activities, and the

19   courts, through a heighten scrutiny review, ruled against the infringing state actors, and denied

20   the state actors in question, attempts to summarily dismiss said litigants complaints.  Similarly,

21   Plaintiff has alleged facts that the BOLE-a state actor-implementing of the NYCRR has infringed

22   on his speech activities and therefore this court should deny the Defendant's request for dismissal

23   under FRCP 12(b)(6), because Plaintiff has in fact pled facts by which this court can grant relief.

24   .  In <u>Mothershed v. Justices of Supreme Court</u>, 410 F.3d 602, 611, the 9th Circuit employed

25   intermediate scrutiny, not rational basis, to review the State of Arizona's bar admission

26   regulations with regard to pro ha vice rules. The 9th Circuit held:

27

28      

1    Time, place, and manner regulations are reasonable provided that "the restrictions 'are

2    justified without reference to the content of the regulated speech, that they are narrowly

3    tailored to serve a significant governmental interest, and that they leave open ample

4    alternative channels for communication of the information.'" *Kuba v. 1-A Agric. Ass'n*,

5    387 F.3d 850, 858 (9th Cir.2004) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781,

6    791 (1989) (internal quotation marks omitted)).

7   In Transportation Alternatives v. City Of New York, 218 F. Supp. 2d 423, 428 the

8   district court held:

9    Thus, when the government seeks to regulate speech based on its content it must

10    overcome the presumption of unconstitutionality. For example "[a] statute is presumably

11    inconsistent with the First Amendment if it imposes a financial burden on a speaker

12    because of the content of their speech." Simon & Schuster Inc. V. Members of New York

13    State Crime Victims Board, 502 U.S. 105, 115, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991).

14    Likewise "government regulation may not favor one speaker over another." Rosenberger

15    v. Rector and Visitors of the Univ. Of Virgina, 515 U.S. 819, 828, 115 S.Ct. 2510, 132 L.

16    Ed.2d 700 (1995).

17   Per *Mothershed* and *Transportation Alternatives* NYCRR are not reasonable time, place, manner

18   restrictions, because said rules refers to the content of speech at correspondence law schools as

19   not being "approved", and thus it is presumably unconstitutional. The NYCRR certainly favor

20   one class of speaker over another, in that the NYCRR provides no route to licensing for a

21   correspondent Juris Doctorate, but allows graduates of "approved schools" the only opportunity

22   to become a licensed attorney in the state of New York. Furthermore, it is silly to suggest that

23   correspondence Juris Doctorates obtained their credentials through "artifice" or fraud as the

24   Defendant has suggested, (thus Plaintiff and all Correspondent Juris Doctorates who have passed

25   the California Bar, surely duped the California bar examiners into giving them law licenses and

26   turning them loose to pilfer all unsuspecting legal consumers) . Therefore the Defendant

27

28

unfounded assertions throughout their moving papers, coupled with the plain language of the NYCRR , is clear evidence of speech preference on the part of the NYCRR, which results in an absolute ban to a Correspondent Juris Doctorates ability to take the New York Bar exam, and said ban is a complete infringement on the Speech and Associative rights exercised at Correspondence and Distant Learning Schools of Law, in violation of Plaintiff's 1st and 14th Amendments of the United States Constitution.

In <u>Niemotko v. Maryland</u>, 340 U.S. 268, 272, the Court said:

> The right to equal protection of the laws, in the exercise of those freedoms of speech and religion protected by the First and Fourteenth Amendments, has a firmer foundation than the whims or personal opinions of a local governing body.

In <u>Anderson v. Celebrezze</u>, 460 U.S. 780, the Court said the following:

> Our ballot access cases . . . focus on the degree to which the challenged restrictions operate as a mechanism to exclude certain classes of candidates from the electoral process. The inquiry is whether the challenged restriction unfairly or unnecessarily burdens 'the availability of political opportunity.' " Clements v. Fashing, 457 U.S. ----, ---- , 102 S.Ct. 2836, 2844, 73 L.Ed.2d 508 (1982) (plurality opinion), quoting Lubin v. Panish, *supra,* 415 U.S., at 716, 94 S.Ct., at 1320.

In <u>Comcast Cablevision of Broward v. Broward County</u> 124F.Supp.2d 685, 693 (S.D.Fla. 2000) this district court said:

> Under the First Amendment, government should not interfere with the process by which preferences for information evolve. Not only the message, but also the messenger receives constitutional protection.

In <u>Metromedia, Inc. v. City of San Diego</u>, 453 U.S. 490, the Court said:

> Although the city may distinguish between the relative value of different categories of commercial speech, the city does not have the same range of choice in the area of noncommercial speech to evaluate the strength of, or distinguish between, various

communicative interests. See Carey v. Brown, 447 U.S. at 462; Police Dept. of Chicago v. Mosley, 408 U.S. 92. With respect to noncommercial speech, the city may not choose the appropriate subjects for public discourse: "To allow a government the choice of permissible subjects for public debate would be to allow that government control over the search for political truth." Consolidated Edison Co., 447 U.S., at 538

In City of Ladue v. Gilleo, 512 U.S. 43, 55, the Court said the following:

Our prior decisions have voiced particular concern with laws that foreclose an entire medium of expression. Thus, we have held invalid ordinances that completely banned the distribution of pamphlets within the municipality, Lovell v. Griffin, 303 U.S. 444, 451 -452 (1938); handbills on the public streets, Jamison v. Texas, 318 U.S. 413, 416 (1943); the door-to-door distribution of literature, Martin v. Struthers, 319 U.S. 141, 145 -149 (1943); Schneider v. State, 308 U.S. 147, 164 -165 (1939), and live entertainment, Schad v. Mount Ephraim, 452 U.S. 61, 75 -76 (1981). See also Frisby v. Schultz, 487 U.S. 474, 486 (1988) (picketing focused upon individual residence is "fundamentally different from more generally directed means of communication that may not be completely banned in residential area"). Although prohibitions foreclosing entire media may be completely free of content or viewpoint discrimination, the danger they pose to the freedom of speech is readily apparent - by eliminating a common means of speaking, such measures can suppress too much speech.

In Police Department of Chicago v. Mosley, 408 U.S. 92, 101, the Court stated:

Similarly, we reject the city's argument that, although it permits peaceful labor picketing, it may prohibit all nonlabor picketing because, as a class, nonlabor picketing is more prone to produce violence than labor picketing. Predictions about imminent disruption from picketing involve [408 U.S. 92, 101] judgments appropriately made on an individualized basis, not by means of broad classifications, especially those based on subject matter. Freedom of expression, and its intersection with the guarantee of equal

1  protection, would rest on a soft foundation indeed if government could distinguish among

2  picketers on such a wholesale and categorical basis.

3  In Carey v. Brown, 447 U.S. 455, 457, the Court said:

4      The State's interest in protecting the well-being, tranquility, and privacy of the home is

5      certainly of the highest order in a free and civilized society. "`The crucial question,

6      however, is whether [the Illinois' statute] advances that objective in a manner consistent

7      with the command of the Equal Protection Clause.' Reed v. Reed, 404 U.S. 71, 76

8      [(1971)]." Police Department of Chicago v. Mosley, 408 U.S., at 99 . And because the

9      statute discriminates among pickets based on the subject matter of their expression, the

10      answer must be "No."

11  In Leathers v. Medlock, 499 U.S. 439, 448, the Court said with regard to content based

12  restrictions like the NYCRR :

13      The danger from a tax scheme that targets a small number of speakers is the danger of

14      censorship; a tax on a small number of speakers runs the risk of affecting only a limited

15      range of views. The risk is similar to that from content-based regulation: it will distort the

16      market for ideas. "The constitutional right of free expression is . . . intended to remove

17      governmental restraints from the arena of public discussion, [499 U.S. 439, 449] putting the

18      decision as to what views shall be voiced largely into the hands of each of us . . . in the

19      belief that no other approach would comport with the premise of individual dignity and

20      choice upon which our political system rests." Cohen v. California 403 U.S. 15, 23.

21  In Brotherhood of Railroad Trainmen v. Virginia EX REL. Virginia State Bar, 377 U.S. 1, 6 the

22  Court noted:

23      Virginia undoubtedly has broad powers to regulate the practice of law within its borders;

24      but we have had occasion in the past to recognize that in regulating the practice of law a

25      State cannot ignore the rights of individuals secured by the Constitution. For as we said in

26      NAACP v. Button, supra, 371 U.S., at 429, 83 S.Ct., at 336, 9 L.Ed.2d 405, 'a State cannot

27

28

1

2    foreclose the exercise of constitutional rights by mere labels.

3    The district court in <u>Forsalebyowner.com Corp v. Zinnemann</u>, 347 F.Supp.2d 868, 877, spoke on

4    statutes like the NYCRR which distinguish between the content of speech and, thereby foreclose

5    "some"speakers from participating in the market place of ideas, the court noted:

6        California cannot make arbitrary distinctions based on the manner of speech or the media

7        used for publication. See City of Lakewood v. Plain Dealer, 486 U.S. 763, 108 S.Ct. 2138

8        ("a law or policy permitting communication in a certain manner for some but not for other

9        raises the specter of content and viewpoint censorship"); Greater New Orleans

10       Broadcasting Ass'n, Inc. V. U.S., 527 U.S. 173, 195, 119 S.Ct. 1923, 133 L.Ed.2d 161

11       (1999) ("decisions that select among speakers conveying virtually identical messages are

12       in serious tension with the principles undergirding the First Amendment"); City of Ladue

13       v. Gilleo, 512 U.S. 43, 48, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994) ("regulation of a

14       medium inevitably affects communication itself")

15

16   The district court in <u>U.S. Satellite Broadcasting Co., Inc. V. Lynch</u>, 41 F.Supp.2d 1113, 1121 also

17   spoke on the evils of a state actor like the BOLE applying the NYCRR, which prefer one speaker

18   over another, and how this speech preference erodes the First Amendment protections, the court

19   noted:

20       Like the Son of Sam law, the Boxing Act tax "singles out income derived from expressive

21       activity for a burden the state places on no other income," by creating "a financial

22       disincentive" to broadcast telecasts with a particular content...." Like the Son of Sam law,

23       the Boxing Act therefore violates the First Amendment unless it passes strict scrutiny.

24

25

26

27

28

1   In <u>Keyishian v. Board Of Regents</u> 385 U.S.589, 603 the Court stated:

2   **Our nation is deeply committed to safeguarding academic freedom, which is of**

3   **transcendent value to all of us and not merely to the teachers concerned. That**

4   **freedom is therefore a special concern of the First Amendment, which does not**

5   **tolerate laws that cast a pall of orthodoxy over the classroom. "The vigilant**

6   **protection of constitutional freedoms is nowhere more vital than in the community of**

7   **American schools." <u>Shelton v. Tucker</u>, *supra*, at 487. The classroom is "peculiarly the**

8   **marketplace of ideas." The Nations's future depends upon leaders trained through**

9   **wide exposure to that robust exchange of ideas which discovers truth "out of a**

10  **multitude of tongues, [rather] than through any kind of authoritative selection."**

11  **<u>United States v. Associated Press</u>, 52 F.  Supp. 362, 372.**

12  In light of the wisdom reflected in the *Keyishan* opinion, the litany of related opinions

13  noted by Plaintiff that clearly declare unconstitutional content-based restrictions on speech, like

14  the plain language of NYCRR's  which differentiate speakers based on the content of instruction

15  that occurs at a given law school, in conjunction with the Defendant's unfounded, and

16  unreasoned, commentary on the instruction that occurs at correspondence schools of law, is the

17  antithesis of the protection of academic freedom with regard to bar admission  policy as promoted

18  by the BOLE per the NYCRR. Therefore this court should presume, as the district court did in

19  *Transportation Alternatives*, that the NYCRR -520.5 and 520.3 and all of its subsections- are

20  unconstitutional because of its preference to the speech and association activities at "approved

21  schools"over the speech and associative activities at correspondence schools of law, and therefore

22  the NYCRR  act as complete ban to a licensed attorney in good standing with the California Bar,

23  with trial experience, the opportunity to take the New York Bar Exam, because Plaintiff just so

24  happened to graduate from a correspondence law school. This Court should note the NYCRR acts

25  as a tremendous financial disincentive for persons ambitious enough to study law at a school not

26

27

28

1  "approved" by the NYCRR, and save thousands of dollars in the process by refusing to be a slave

2  to student lenders, in that, under the current NYCRR a correspondent Juris Doctorate is

3  foreclosed from any opportunity to take the New York Bar Exam, and therefore why would a

4  potential correspondent Juris Doctorate , with hopes of taking the New York Bar Exam attend a

5  Correspondence School of Law, if after four years of study you have nothing to show for it. The

6  NYCRR Rule as applied by the BOLE is in complete violation of Plaintiff's First Amendment

7  Speech and Association activities as noted in the following decisions: *U.S. Satellite Broadcasting*

8  *Co., Inc, Simon & Schuster, Forsalebyowner.com Corp*, and *City of Ladue*. Therefore this Court

9  should pose the question to the Defendant, as the 9th Circuit did in *Mothershed,* with regard to the

10 Defendant's  alleged interest at preventing ill-trained lawyers  harming New York's legal

11 consumers as the Defendant  concludes in their moving papers.

12 The 9th Circuit in *Mothershed* held:

13          A time, place, and manner regulation is narrowly tailored  as long as the substantial

14          governmental interest it serves "would be achieved less effectively absent the regulation

15          and the regulation achieves its ends without . . . significantly restricting a substantial

16          quantity of speech that does not create the same evils." Galvin v. Hay, 374 F.3d 739, 753

17          (9th Cir. 2004) (internal quotation marks omitted; alteration in original).

18  New York, like California, and other progressive States that allow correspondent Juris Doctorates

19 to sit for their respective bar exams or waive in without examination, all seeks to protect their

20 residence from ill-trained lawyers, which is the very reason a State administers a bar exam in the

21 first instance, in order to determine if the candidate in question meets the minimum standards of

22 competency to become a lawyer, and the very reason a State requires each candidate to submit a

23 morale turpitude application,  however California, and other progressive state bar associations,

24 that allow Correspondent Juris Doctorates the opportunity to sit for their respective bars without

25 infringement,  have not constructed their bar admission rules in a manner that significantly

26

27

28

1  restricts and disparage the speech and association activities, of a whole class of potential lawyers

2  that can add to the robust exchange of ideas, and assist in serving potential legal consumers as

3  Plaintiff has on several occasions by way of obtaining out right acquittals for his criminal clients.

4      The Court in <u>Edenfield ET AL. v. Fane</u>, 507 U.S. 760, 770, spoke for the need of

5  government actors such as the BOLE through implementing the NYCRR Rule with regard to

6  evidencing their claims of harm from ill-trained lawyers, and not just crying wolf in order to

7  disguise blatant speech discrimination designed to foreclose a whole class of speakers, the

8  *Edenfield* Court noted:

9      It is well established that "[t]he party seeking to uphold a restriction on commercial

10     speech carries the burden of justifying it." Bolger v. Youngs Drug Products Corp.,463 U.S.

11     60, 71 , n. 20 (1983); *Fox*, 492 U.S., at 480 . This burden is not satisfied by mere

12     speculation or conjecture; rather, a [507 U.S. 761, 771] governmental body seeking to sustain

13     a restriction on commercial speech must demonstrate that the harms it recites are real, and

14     that its restriction will in fact alleviate them to a material degree. See, e.g., Zauderer v.

15     Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626, 648 -649 (1985);

16     *Bolger*, supra, at 73; *In re R.M.J.*, 455 U.S., at 205 -206; *Central Hudson Gas & Electric*

17     *Corp.*, supra, at 569; Friedman v. Rogers, 440 U.S., at 13 -15; Linmark Associates, Inc. v.

18     Willingboro, 431 U.S. 85, 95 (1977). Without this requirement, a State could with ease

19     restrict commercial speech in the service of other objectives that could not themselves

20     justify a burden on commercial expression.

21  The Court in <u>Consolidated Edison Co. v. Public Ser. Comm'n</u>, 447 U.S. 530, 543 commented on

22  government actors like BOLE's empty claims of harm to the public as noted below:

23     Mere speculation of harm does not constitute a compelling state interest. See Mine

24     Workers v. Illinois Bar Assn.,389 U.S. 217, 222 -223

25  In <u>Walker v. Flitton</u>, 364 F.Supp.2d 503, 522 and 525, noting the absence of evidence that the

26

27

28

Director of the Pennsylvania Funeral Board presented in Defense of their statute, the court noted :

> As previously noted, during discovery, each Defendant was asked if they kn[e]w of any studies, reports, analyses, statistics, communications or other documents which concern or relate to consumer confidence and/or consumer injury with regard to unlicensed sale of preneed [funeral] insurance, plans and services:.... (Pls.' R. At 289, *et. sep.*)  In answering this question, none of the Defendants put forth any evidence that consumers had been harmed by the unlicensed solicitation of preneed funeral services.

The *Walker* court went on to say on page 525 of its opinion:

> Defendants deign to prohibit **all** solicitation or contact by unlicensed individuals, leaving no other alternative for unlicensed employees and agents of funeral directors to engage in commercial speech in this area . *Gregory*, 608 So.2d at 993. (*citing In re. R.M.J.*, 455 U.S. at 191, 102 S.Ct. 929 (holding that the state may only impose restrictions reasonably necessary to prevent deception.)). Therefore, the Board members' interpretation of the Law and the resulting prohibitions are more extensive than necessary and are not narrowly tailored to meet the asserted interest.

In short the BOLE through the application of NYCRR  can not satisfy either standard as articulated in *Mothershed* or *Transportation Alternatives* (respectively the Intermediated standard or the Strict Scrutiny Review standard), because both standards require the BOLE to regulate the admission of potential New York lawyers without reference to the content of speech occurring at a particular candidates school of law, which the NYCRR  woefully fails at, and despite the Defendant  unfounded language disparaging the speech and associative activities at correspondence schools of law, the Defendant's  moving papers are completely barren of any shred of empirical evidence that licensed attorneys having graduated from a correspondence law school, are more prone to commit acts of malfeasance than an attorney graduate of an "approved school" per the NYCRR , and therefore this Court is compelled to declare the NYCRR Rules(s)

as applied by the BOLE are unconstitutional and inconsistent with the First Amendment as noted in the wisdom reflected in *Consolidated Edison Co.*, *Edenfield*, and the *Walker* decisions and the other previously cited cases by Plaintiff.

Therefore based on the after mentioned authority, this court is mandated to apply heighten scrutiny to Plaintiff's complaint alleging the BOLE application of the NYCRR is a content based restriction on Plaintiff's speech activities, and therefore Plaintiff's request for dismissal under FRCP 12(b)(6) should be denied as a result of Plaintiff pleading a complaint in which this court can grant relief.

**THE RATIONAL BASIS TEST IS INAPPLICABLE TO PLAINTIFF'S CASE-IN-CHIEF**

Rational Basis Test does not appear to apply to Plaintiff's case-in-chief, because as Plaintiff has stated previously, Plaintiff amended complaint has thoroughly pled facts alleging the BOLE imposing of the NYCRR has infringed on his fundamental speech activities, and therefore in the name of judicial economy, Plaintiff will not distinguish or dissect cases cited by the Defendant in which Plaintiff has no objection to, Plaintiff will concentrate his efforts to demonstrate how the Defendant cites a series of non-applicable cases to lull this Court into falsely applying the Rational Basis Test, which would cause an egregious miscarriage of justice.

The Defendant has intentionally misconstrued the quoted language of Justice Frankfurter in Tigner v. Texas 310 U.S. 141, 147, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same," and just so the record is clear, Plaintiff is not asking this court to treat things which are different in fact or opinion as they are the same. Plaintiff is asking this court to compel the Defendant to allow Plaintiff to sit for the New York bar exam, just as the Defendant would allow another licensed

attorney, in good standing to sit for the New York Bar Exam. Plaintiff and attorneys-allowed to take the New York Bar Exam-are similarly situated, in that, both parties in question are attorneys. The non-consequential difference used by the Defendant to wholly ban Plaintiff from taking the New York Bar Exam, without any alternative channel to become a licensed New York attorney, is that the attorney allowed to take the New York Bar Exam, has graduated from an "approved school", and Plaintiff did not. Plaintiff contends that the Defendant's insistence on only "approved schools" graduates being allowed to sit for the New York Bar, is completely inconsistent with the First Amendment prohibition on the abridgment of speech.

In Regan v. Time, Inc., 468 U.S. 641, 648, the Supreme Court denounced content based laws like the NYCRR, by stating the following:

> Regulations which permit the Government to discriminate on the basis of the content of the message cannot be [468 U.S. 641, 649] tolerated under the First Amendment. Id., at 463; Police Department of Chicago v. Mosley, 408 U.S. 92, 95-96 (1972). The purpose requirement of 504 is therefore constitutionally infirm.

The NYCRR categorizing graduates of correspondence law schools as "non-approved" is a content based discrimination on Plaintiff's speech activities which wholly bans Plaintiff from sitting for the New York Bar Exam. Plaintiff's contention is that the Defendant rant about prohibiting correspondence Juris Doctorates would "... protect the public from ill-trained attorneys," is a claim without any evidence to suggest a licensed attorney from a correspondence school is more likely to reek havoc on the legal consuming public, then an attorney from an "approved school" as defined by the NYCRR.

Justice Black writing the majority opinion in United Mine Workers of America, District 12 v. Illinois State Bar, 389 U.S. 217, 222 stated:

> The First Amendment would, however, be a hollow promise if it left government free to destroy or erode its guarantees by indirect restraints so long as no law is passed that

BAZADIER V. McLARY 09-CV-990 U.S. DISTRICT COURT FOR THE NORTHER DISTRICT OF NEW YORK    15

prohibits free speech, press, petition, or assembly as such. We have therefore repeatedly held that laws which actually affect the exercise of these vital rights cannot be sustained merely because they were enacted for the purpose of dealing with some evil within the State's legislative competence, or even because the laws do in fact provide a helpful means of dealing with such an evil. Schneider v. State, 308 U.S. 147 (1939); Cantwell v. Connecticut, 310 U.S. 296 (1940).

Lastly, Plaintiff is able to distinguish the facts in *Tigner*, and this instant case, because *Tigner* dealt with price fixing on beer, no where in the opinion did the Court note that appellant classified their alleged infringement as a violation of their fundamental rights, as Plaintiff in this instant case has repeatedly done in his complaint.

In citing <u>Pyler v. Doe</u>, 457 U.S. 202, 213 the Defendant  forgot to disclose that the Court ruled against the school board due to the fact "[t]he Equal Protection Clause was intended to work nothing less than the abolition of all caste-based and invidious class-based legislation. That objective is fundamentally at odds with the power the State asserts here to classify persons subject to its laws as nonetheless excepted from its protection."

Case in point, the NYCRR administered by the BOLE creates two caste of Juris Doctorates, those Juris Doctorates given preferential treatment, and authorized to take the New York Bar Exam, and Juris Doctorates from unapproved schools of law as defined by the NYCRR, which are wholly barred and discouraged from taking the New York Bar Exam, as Nick Drainas, author of *Surfing Past the Pall of Orthodoxy: Why the First Amendment Virtually Guarantees Online Law School Graduates Will Breach the ABA Accreditation Barrier*  succinctly put it:

>....states that restrict bar eligibility to graduates of ABA-accredited law schools not only punish graduates of online JD programs for daring to have engaged in online educational communication, they necessarily devalue educational communication and association over

1    the Internet. This, in turn, predictably diminishes the amount of protected Internet speech

2    and association in favor of traditional face-to-face communication and association.

3    Thus, this Court should be encouraged to apply the Equal Protection Clause of the Fourteenth

4    Amendment as mandated in *Pyler,* to prohibit the BOLE from creating second class lawyers

5    prohibited from taking the New York Bar Exam.

6    The Defendant citing of Schware v. Board of Bar Examiners, 353 U.S. 232, 239 is misleading,

7    because left up to the Defendant  they would claim that a State Bar is free to impose any minimal-

8    half reasoned exclusionary rule, so long as said exclusionary rule is rationally related to some

9    feigned government interest, when in fact the majority in *Schware* at page 239 stated:

10   A State cannot exclude a person from the practice of law or from any other occupation in a

11   manner or for reasons that contravene the Due Process or Equal Protection [353 U.S. 232,

12   239] Clause of the Fourteenth Amendment. 5 Dent v. West Virginia. Cf. Slochower v.

13   Board of Education, 350 U.S. 551 ; Wieman v. Updegraff, 344 U.S. 183 . And see Ex

14   parte Secombe, 19 How. 9, 13. A State can require high standards of qualification, such as

15   good moral character or proficiency in its law, before it admits an applicant to the bar, but

16   any qualification must have a rational connection with the applicant's fitness or capacity to

17   practice law. Douglas v. Noble, 261 U.S. 165 ; Cummings v. Missouri, 4 Wall. 277, 319-

18   320. Cf. Nebbia v. New York, 291 U.S. 502 . Obviously an applicant could not be

19   excluded merely because he was a Republican or a Negro or a member of a particular

20   church. Even in applying permissible standards, officers of a State cannot exclude an

21   applicant when there is no basis for their finding that he fails to meet these standards, or

22   when their action is invidiously discriminatory. Cf. Yick Wo v. Hopkins, 118 U.S. 356 .

23   In this instant case the Defendant  has no rational reason, assuming the Court uses such review, to

24   exclude Plaintiff, because he has demonstrated with his good standing with the California Bar and

25

26

27

28

his trial experience that Plaintiff is not "ill-trained," and therefore the Defendant's imagined threat(s) is only an excuse to engage in "invidious" discrimination.

Plaintiff is not objecting to the sentiment communicated in <u>San Antonio Indep. School Dist. v. Rodriguez</u>, 411 U.S. 1, or <u>New Orleans v. Dukes</u>, 427 U.S. 297, or <u>Vance v. Bradley</u> 440 U.S. 93, i.e. when a cause of action does not concern a fundamental right, or a suspect class, rational basis review is only applicable. However, unlike the appellees in *Vance*, in particular, this Plaintiff did in fact clearly plead the NYCRR as administered by the BOLE facially discriminate against the equal protection of law as it applies to Plaintiff exercising his freedom of speech and association rights protected by the First and the Fourteenth Amendments, and thus preclude Plaintiff from freely associating with existing licensed New York attorney's as a fellow licensed New York attorney by not having the opportunity to take and pass the New York Bar Exam. Therefore none of the Defendant s after mentioned cases have any application to Plaintiff's case-in-chief, and thus do not bind this court to apply a rational basis review.

The Defendant  cites a litany of cases involving bar applicants from "unapproved"schools of law seeking to take various state bar exams, that adhere to various forms of the ABA only rules, therefore Plaintiff will distinguish himself from those other applicants and demonstrate why this court is mandated to review this instant case under a heightened scrutiny.

In <u>Nordgren v. Hafter</u>, 789 F.2d 334, the appellant, who was a non-lawyer was seeking to have the 5th Circuit hold that Mississippi's bar admissions process as it related to graduates from non-ABA accredited-out of state law schools was violation of the Equal Protection clause, but the Court noted:

> Nordgren has stated a colorable equal protection claim, see Pappanastos v. Board of Trustees, Etc., 615 F.2d 219 (5th Cir.1980); compare Attwell v. Nichols, 608 F.2d 228, 231 (5th Cir.1979) (per curiam), cert. denied, 446 U.S. 955, 100 S.Ct. 2924, 64 L.Ed.2d 813 (1980). But she is a white Jewish female who challenges a classification which is not based upon racial, religious, gender, or other suspect classifications or fundamental rights.

As previously stated Plaintiff has certainly pled facts in his complaint-unlike *Nordgren*-alleging the NYCRR as administered by the BOLE, which allow a mere Juris Doctorates from an "approved" school of law to take the New York Bar Exam, while conversely wholly banning a licensed attorney in good standing with the California State Bar from taking the New York Bar Exam, said NYCRR are a clear violation of Plaintiff's Equal Protection of the laws by the BOLE preference of speech and associative activities of graduates from "approved" law schools per Plaintiff's Fourteenth and First Amendments. Therefore *Nordgren* is not applicable to Plaintiff's case, and this Court should apply heightened scrutiny.

Plaintiff distinguishes his facts from the appellant in Lupert v. California State Bar, 761 F.2d 1325, in a number of ways, first and foremost the California State Bar, unlike New York's BOLE, provided *Lupert* a clear means to acquire a bar card, something the BOLE through the NYCRR are clearly denying Plaintiff. Secondly, *Lupert,* who failed the FYSBX filed her "specious" cause of action in order to circumvent her own short comings and blame others, instead of refining her study methods, pass the FYSBX, and then take and pass the senior bar, like scores of other individuals have done in her exact circumstance. Lastly Plaintiff is not claiming he has **some abstract** Fundamental Right to Practice Law in the State of New York, without laying down a sufficient foundation to demonstrate the NYCRR as administered by the BOLE, are construed in a manner that is in violation of Plaintiff's after mentioned Constitutional rights, therefore *Lupert,* has no application to Plaintiff's case in chief.

Plaintiff is able to distinguish his case from the appellants in Schumacker v. Nix, 965 F.2d 1262, although like the appellants in *Schumacher*, Plaintiff too is a licensed attorney from California in good standing with the California Bar for five years at the time he sought to take the New York Bar. Therefore the Defendant use of the quoted language in *Schumacher* found on page 1268, which states:

1    Plaintiffs have not alleged that any other fundamental right is impinged by Rule

2    203(a)(2)(ii). We note, however, that "the right to practice law is not a fundamental right

3    for purposes of ... equal protection analysis." *Edelstein v. Wilentz*, 812 F.2d 128, 132 (3d

4    Cir.1987). Cf. *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 281, 105 S.Ct.

5    1272, 1276-77, 84 L.Ed.2d 205 (1985) (suggesting that the opportunity to practice law is

6    fundamental for purposes of a Privileges and Immunities Clause analysis).

7    This Plaintiff has alleged a violation of his First Amendment rights of Free Speech and

8    Association have been infringed by the NYCRR as administered by the BOLE giving preferential

9    treatment to Juris Doctorates of "approved" law schools. Plaintiff has never alleged any Privileges

10   and Immunities violation, and therefore *Schumacher* has no application to Plaintiff's case what so

11   ever, and this Court is mandated to apply a heightened scrutiny for the NYCRR as administered

12   by the BOLE which have infringed on Plaintiff's fundamental rights so pled in Plaintiff's

13   complaint.. As previously stated, Plaintiff has clearly pled an infringement of his fundamental

14   rights with regard to the NYCRR excluding him from taking the NY Bar Exam via said

15   unconstitutional preference of the speech activities that occur at "approved" law schools, therefore

16   the decision in <u>Allied Stores v. Bowers</u>, 358 U.S. 522, 528 is not controlling because the

17   discriminatory conduct on the part of the BOLE does not concern taxes or some other non-

18   fundamental infringement.

19   Plaintiff, has no idea why the Defendant believed <u>Sailbra v. Supreme Court of Ohio</u>, 730 F.2d

20   1059 has any applications to the facts in Plaintiff's case. *Sailbra*, who was an out of state attorney

21   seeking admission to the Ohio State Bar, had a clear route to being licenced in Ohio-be employed

22   by an Ohio licenced attorney for five years-*Sailbra*, did not alleged his speech activities were

23   infringed upon, and therefore the court noted that his suit did not involve a fundamental right, or

24   suspect class, therefore rational basis review was applicable. Plaintiff has no objection to the

25

26

27

28

*Sailbra* decision, because Plaintiff understands *Sailbra* facts have no application to this instant case.

In the same vein of *Sailbra,* the Defendant  has miss-applied *Leis v. Flynt*, 439 U.S. 438, both counsel for Hustler and Flynt,  were not Ohio licensed attorneys, but both out-of-state attorneys had a route to represent their client's in the Ohio State Criminal Courts, had they submitted a pro hac vice motion, **which they did not**, and therefore *Leis v. Flynt*, has no relevance to Plaintiff's facts in this instant case, because Plaintiff has been given no such opportunity to obtain a New York Bar Card.

Again, appellant in <u>Lowrie v. Godenhersh</u>, 716 F.2d 1059, has no application to Plaintiff's facts. *Lowrie* had a clear opportunity to obtain a Illinois Bar Card, without examination, had he practiced law in Illinois for 5 of the last 7 years prior to him submitting his application to waive in without examination.. *Lowrie* could have even sat for the Illinois Bar Exam in order to obtain a Illinois Bar Card, which he refused to do.  Lastly, *Lowrie* basis for discriminatory conduct was not an allegation of infringement on speech related activities, like Plaintiff has in this instant case, but on phantom claims of constitutional violations which the Court denied and classified as a non-fundamental right

As Plaintiff has previously distinguished his facts from the facts in <u>City of New Orleans v. Dukes</u>, Plaintiff will use the same argument as it applies to both of the following cases, <u> City of Cleburne v. Cleburne Living Center, Inc</u>. 473 U.S. 432, and <u>McGowan v. Maryland</u>, 366 U.S. 420.  None of the alleged discriminatory conduct in the above mentioned cases related to an infringement of a Fundamental right, therefore none of the above mentioned cases have any applications to Plaintiff's case before this Court.

Plaintiff is not sure why, the Defendant  would cites <u>Jones v. Board of Comm'rs </u>737F.2d 72, other than the Defendant  is seeking to bludgeon this Court into applying rational basis review, despite Plaintiff's contentions that the NYCRR as administered by the BOLE, is a complete ban

on a correspondence Juris Doctorates ability to sit for the New York Bar, which is a total infringement on Plaintiff's Speech and Association rights per Plaintiff's First Amendment, therefore the NYCRR are discriminatory as applied to Plaintiff . Note, factually *Jones* is not applicable to Plaintiff's case either, in that *Jones*, had an opportunity to sit for the Alabama bar exam, and Plaintiff has no corresponding opportunity to sit for the New York bar exam. Lastly, the underlining discrimination that *Jones* complained of was an alleged violation to her substantive due process, not her Speech and Association activities per the First Amendment, like the Plaintiff has in this instant case, thus for the foregoing reasons *Jones* is not applicable to these facts. Therefore based on the above listed authority the Rational Basis Test is inapplicable to Plaintiff's facts, and thus the Defendant's have no relief under FRCP 12(b)(6).

**IN CONCLUSION**

As Plaintiff has made evident throughout his well pleaded amended complaint (in which this court can grant relief), the BOLE, through implementing of the NYCRR, is certainly engaging in unconstitutional speech preference, and therefore this court is mandated to apply heighten scrutiny to Plaintiff's facts. Therefore based on the above listed authority, Plaintiff humbly request this court to deny the Defendant's 12(b)(1) and 12(b)(6) motion and allow Plaintiff's case to proceed to trial.

**CERTIFICATE OF SERVICE BY MAIL**

STATE OF ILLINOIS          :

                                        ss

County of COOK          :

I, Frank Alain Bazadier, hereby certify that I am the plaintiff herein and served a copy of the following document:

**PLAINTIFF'S RESPONSE TO  DEFENDANT'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1) AND 12(b)(6)**

THE STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL
C/O Mr. Stephen M. Kerwin AAG
The Capitol
Albany, NY 12224-0341

JAMES T. FOLEY - US COURTHOUSE
C/O CLERK FOR HON GARY L. SHARPE
445 BROADWAY, Room 509
Alabany, NY 12207-2924

by mailing and depositing a true and correct copy of said documents in a mailbox located at CHICAGO, on the following date: March 26, 2010

        I certify that the foregoing is true and correct.

DATED: March 26, 2010

                                        _____
                                        Signature of Plaintiff