UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

FRANK BAZADIER

*Plaintiff,*

-against-

09-CV-0990

JOHN McALARY, in his official capacity as the Executive
Director of the New York Board of Law Examiners, and
Jonathan Lippman, Carmen Beauchamp Ciparick, Victoria
A. Graffeo, Robert S. Smith, Theodore T. Jones, Susan P.
Read, Eugene F. Pigott, Jr. in their official capacity as
Judges on the New York Court of Appeals,

GLS / RFT

*Defendants.*

## MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FRCP 12 (c), AND IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT

ANDREW M. CUOMO
Attorney General of the State of New York
Attorney for Defendants John J. McAlary, and
   Hons. Jonathan Lippman, Carmen
   Beauchamp Ciparick, Victoria A. Graffeo,
   Robert S. Smith, Theodore T. Jones,
   Susan P. Read and Eugene F. Pigott, Jr.
The Capitol
Albany, New York  12224-0341

Stephen M. Kerwin
Assistant Attorney General, of Counsel
Bar Roll No. 103129
Telephone:  (518) 473-7184
Fax:  (518) 402-2221 (Not for service of papers)                    Date: April 28, 2010

**Table of Contents**

Preliminary Statement..............................................................................................1

FACTS......................................................................................................................1

ARGUMENT............................................................................................................3

   1. Standards of Review .......................................................................................3

      A. FRCP 15...................................................................................................3

      B.  Interplay FRCP 15(a) and 12 (b)(6)..................................................4


POINT I:  PLAINTIFF'S MOTION TO AMEND WOULD BE FUTILE
              BECAUSE PLAINTIFF CANNOT SATISFY THE STRINGENT
              STANDARD IMPOSED UPON FACIAL CHALLENGES............................5


POINT II:  PLAINTIFF FAILS TO ADEQUATELY ALLEGE A VIOLATION
             OF A FUNDAMENTAL RIGHT. ....................................................8

    1. The Plaintiff Fails To State A Violation of The Freedom
        of Speech Clause..........................................................................8

    2. Plaintiff Fails To State A Violation of the Freedom of
        Association Clause......................................................................10

POINT III: UNDER RATIONAL BASIS ANALYSIS, PLAINTIFF FAILS
            TO STATE A VIOLATION OF THE EQUAL PROTECTION
            CLAUSE................ ....................................................................... 11

    1. Application of the Rational Relation Standard. ................................................14

    2. "Class of One" Equal Protection Claim............................................................17

Conclusion............................................................................................................18

i

**Preliminary Statement**

In response to defendants' motion for judgment on the pleadings which demonstrates that this Court does not have subject-matter jurisdiction to hear this case, and that the plaintiff failed to state a claim, the plaintiff has at least tacitly acknowledged that this Court did not have subject-matter jurisdiction by reason of the rule of law enunciated in <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983).  Plaintiff's admission is evidenced by his filing of a motion to amend his Complaint. Plaintiff's proposed Amended Complaint does not correct the deficiencies in his original Complaint.  Because the plaintiff does not and cannot state a cause of action under the First Amendment, and because the plaintiff's equal protection claim fails under the applicable rational-basis standard, his Complaint should be dismissed, and leave to file his proposed Amended Complaint should be denied as futile.

**FACTS**

Defendants have moved to dismiss under FRCP 12(c) (on FRCP 12(b)(1) and (6) grounds) plaintiff's Complaint against the Executive Director of the New York Board of Law Examiners and the Judges of the New York Court of Appeals arising out of the denial of plaintiff's application to sit for the New York bar examination, and the denial of his request for a waiver of the Court's rules to allow him to take the exam. Plaintiff, pro se, but trained and practicing as an attorney in California, commenced this action pursuant to 42 USC 1983. In the Complaint, plaintiff asserted that 22 NYCRR 520.5 (a) denied him equal protection of the law by giving preference to graduates of traditional, non-correspondence law schools (<u>see</u> Complaint, ¶ 3, 14-17).  He sought, among other relief, an order declaring Rule 520.5(a) unconstitutional "in violation of [his] equal protection of the law in the exercise of his Freedom of Speech and Freedom of Association" and an injunction prohibiting defendants from taking any steps to apply

1

or enforce it (see Complaint, C).  Defendants answered (see Answer) and subsequently moved to dismiss the complaint for lack of subject matter jurisdiction (see FRCP 12 [b] [1]) and for failure to state a claim upon which relief can be granted (see FRCP 12 [b] [6]).

In response to defendants' motion, the plaintiff has moved to file an Amended Complaint. He also submitted a Memorandum of Law in which he argues that his proposed Amended Complaint removes those portions of his initial Complaint which offended the Supreme Court's holding in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) on which the defendants' motion was, in part, predicated.  In his proposed pleading, the plaintiff removed as defendants the individual Judges of the New York Court of Appeals; and he also omitted reference to his November 2008 application for admission to the February 2009 bar examination, to his filing of a petition seeking waiver of 22 NYCRR 520.5, and to denial of that petition by the Court of Appeals.  Plaintiff's proposed Amended Complaint names as the sole defendant John J. McAlary in his official capacity as Executive Director of the New York Board of Law Examiners.  The proposed relief sought by the plaintiff, in addition to costs and fees, are (i) an Order declaring that 22 NYCRR 520.3 and 520.5(a) are unconstitutional insofar as they violate the "Plaintiff's equal protection of the law in the exercise of his Freedom of Speech and Freedom of Association as protected by the First and Fourteenth Amendments;"  and (ii) an injunction prohibiting defendant McAlary and the Board of Law Examiners from enforcing the challenged rules "as it relates to Plaintiff's opportunity to sit for the New York Bar Exam"  (see:  Proposed Amended Complaint, VI.  Prayer for Relief).

Given that the plaintiff apparently concedes that this Court does not have subject-matter jurisdiction to hear his Complaint as it was presented, the only remaining issue is whether the plaintiff should be granted leave to file an Amended Complaint.  Defendants oppose that request.

2

## ARGUMENT

**1. Standards of Review.**

The standard of review to be employed upon plaintiff's motion to amend his complaint occasions some overlap with the standard of review applicable to that portion of defendants' dismissal motion under FRCP 12(b)(6).

### A.  FRCP 15.

Under the Federal Rules of Civil Procedure, "[a] party may amend its pleading once as a matter of course ... before being served with a responsive pleading."[1] Fed.R.Civ.P. 15(a)(1). Otherwise, a party may amend its pleading by leave of the court which should be "freely give[n] ... [when] justice so requires." Fed.R.Civ.P. 15(a)(2).  Such leave is to be liberally granted. Foman v. Davis, 371 U.S. 178, 182 (1962); United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago, 889 F.2d 1248, 1254 (2d Cir.1989) (quoting Foman, 371 U.S. at 182; accord, e.g., Jin v. Metro. Life Ins. Co., 310 F.3d 84, 101 (2d Cir.2002).  Whether to grant leave to amend is a decision committed to the discretion of the district court. Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir.1993) (per curiam) (quoting 3 JAMES WM. MOORE ET AL., *MOORE'S FEDERAL PRACTICE* ¶ 15.08[4], at 15-64 (2d ed.1992)). Amendment may properly be denied in appropriate circumstances, such as when the proposed amendment would be futile. E.g.,  Foman, 371 U.S. at 182; McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir.2007). Futility generally turns on whether the proposed amended pleading states a viable claim. Thus, if the proposed new pleading could not survive a Rule 12 dismissal motion, it will generally be deemed futile. Lucente v. IBM Corp., 310 F.3d

---

[1] In this case, the defendants filed and served an Answer to the Complaint on December 14, 2009;  plaintiff's motion to amend was filed and served on March 29, 2010. Thus plaintiff's right to amend as a matter of course was extinguished upon the filing of the Answer, thus necessitating this motion in order to amend.

243, 258 (2d Cir.2002); <u>Ricciuti v. N.Y. City Transit Auth.</u>, 941 F.2d 119, 123 (2d Cir.1991)).

### B. Interplay of FRCP 15(a) and 12(b)(6).

In assessing futility, the standard applicable on a motion to dismiss pursuant to Rule 12(b)(6) applies: a plaintiff must satisfy a flexible plausibility standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.  The complaint must be enough to raise a right to relief above the speculative level. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007). "This standard does not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570 . In applying this standard, the district court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of plaintiff.  <u>See</u> <u>Cleveland v. Caplaw Enter.</u>, 448 F.3d 518, 521 (2d Cir.2006); <u>Nechis v. Oxford Health Plans, Inc.,</u> 421 F.3d 96, 100 (2d Cir.2005).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). Plausibility "is not akin to a probability requirement;" rather plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u>.  Additionally, the Court is confined to the allegations contained within the four corners of the complaint. <u>Pani v. Empire Blue Cross Blue Shield,</u> 152 F.3d 67, 71 (2d Cir.1998). However, the Court may examine any written instrument attached to [the complaint] or any statements or documents incorporated in it by reference as well as any document on which the complaint relies heavily. <u>Chambers v. Time Warner, Inc.,</u> 282 F.3d 147, 152-53 (2d Cir.2002). Of course, it may also consider matters of which judicial notice may be taken under FED.R.EVID. 201. <u>Kramer v. Time Warner, Inc.</u>, 837 F.2d 767,773 (2d Cir.1991).

4

**POINT I**

**PLAINTIFF'S MOTION TO AMEND WOULD BE FUTILE BECAUSE PLAINTIFF CANNOT SATISFY THE STRINGENT STANDARD IMPOSED UPON FACIAL CHALLENGES.**

To plead an adequate facial challenge to the constitutionality of a law or regulation, a plaintiff must allege facts that, if proven, would "establish that no set of circumstances exists under which the challenged [law] would be valid." Cranley v. Nat'l Life Ins. Co. of Vermont, 318 F.3d 105, 110 (2d Cir.2003) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).

Plaintiff's proposed Amended Complaint asserts (as it must to avoid dismissal on subject-matter jurisdiction grounds) only a facial challenge to the Court of Appeals rules found at 22 NYCRR 520.3 and 520.5(a) (see proposed Amended Complaint, ¶s 1, 11-13 and  Prayer for Relief).  Defendants contend that because the challenged rules do not  target any suspect class or fundamental right, their constitutionality is judged under the "rational basis" test. Under that test, the challenged rules "will not be held unconstitutional if its wisdom is at least fairly debatable and it bears a rational relationship to a permissible state objective." Greene v. Town of Blooming Grove, 879 F.2d 1061, 1063 (2d Cir.1989).  In undertaking that analysis, the Court may consider whether the rules are rationally related to their stated purpose, but "that is ultimately not determinative, and in fact it is not necessary for defendants to enunciate any purpose" for the rule. Ecogen, LLC v. Town of Italy, 438 F.Supp.2d at 157 (citing Panama City Med. Diagnostic Ltd. v. Williams, 13 F.3d 1541, 1546 (11th Cir.1994)). Instead, "the proper inquiry is concerned with the *existence* of a conceivable rational basis, not whether that basis was actually considered …." Id. (quoting Haves v. City of Miami, 52 F.3d 918, 922 (11th Cir.1995)); see also Williams v. Morgan, 478 F.3d 1316, 1320 (11th Cir.) ("A statute is constitutional under rational basis scrutiny so long as 'there is *any reasonably conceivable state of facts* that could provide a

5

rational basis for the [rule]'") (quoting <u>FCC v. Beach Comm'ns, Inc.</u>, 508 U.S. 307, 313 (1993)), <u>cert. denied</u>, 552 U.S. 814 (2007); <u>WMX Technologies, Inc. v. Gasconade County, Missouri</u>, 105 F.3d 1195, 1201 (8th Cir.1997) (in adjudicating a constitutional challenge to an ordinance, "we do not inquire into the methods and motives behind its passage. We ask only whether a *conceivable* rational relationship exists between the ordinance and legitimate governmental ends") (emphasis added).

Thus, as the party presenting a facial challenge to the Court's rules, plaintiff has the burden to "negative every conceivable [rational and legitimate] basis which might support" the rules. <u>Tuan Anh Nguyen v. I.N.S.</u>, 533 U.S. 53, 75 (2001) (quoting <u>Heller v. Doe</u>, 509 U.S. 312, 320 (1993)). That burden is a heavy one. <u>Doe v. Michigan Dep't of State Police</u>, 490 F.3d 491, 504 (6th Cir.2007); <u>Mostowy v. United States</u>, 966 F.2d 668, 672 (Fed.Cir.1992); <u>Genesee Scrap Tin and Baling, Co. v. City of Rochester</u>, 558 F.Supp.2d 432, 434 (W.D.N.Y.2008); <u>Ecogen</u>, 461 F.Supp.2d at 104; <u>see also</u> <u>United States v. Salerno</u>, 481 U.S. 739, 745 (1987) (to show that legislative act is unconstitutional, "challenger must establish that no set of circumstances exists under which the Act would be valid"). In addition, a "classification does not fail rational-basis review because it 'is not made with mathematical nicety or because in practice it results in some inequality.' " <u>Heller</u>, 509 U.S. at 321 (quoting <u>Dandridge v. Williams</u>, 397 U.S. 471, 485 (1970)).

The Second Circuit has explained, "[r]ational basis review is deferential. 'Rational basis review does not pass judgment upon the wisdom, fairness, or logic of legislative decisions; it turns on whether there are plausible reasons for [the legislative body]'s choices.' " <u>Weinstein v. Albright</u>, 261 F.3d 127, 140 (2d Cir.2001) (quoting <u>General Media Comm., Inc. v. Cohen</u>, 131 F.3d 273, 286 (2d Cir.1997), <u>cert. denied</u>, 524 U.S. 951 (1998)). <u>See also</u> <u>Lewis v. Thompson</u>,

6

252 F.3d 567, 590 n. 33 (2d Cir.2001) (describing rational-basis review as "highly deferential"); United States v. Watson, 483 F.3d 828, 835 (D.C.Cir.2007) (same); Williams v. Pryor, 240 F.3d 944, 948 (11th Cir.2001) ("Almost every statute subject to the very deferential rational basis ... standard is found to be constitutional").[2]

Given that standard, the rules at issue here easily pass constitutional muster. The requirements imposed on bar examination applicants clearly have some rational connection to the legitimate ends to be served by the rules.  Correspondence study provides less assurance that work being performed as part of the study is actually done by the enrolled student. The New York rules require law study under direct, in-person supervision,  and restrict from eligibility for taking the bar examination those, like the plaintiff, who studied law at correspondence law schools.  As the New York Court of Appeals rationally concluded long ago, "The reason why preparatory study, educational qualifications, experience, examination and license by the courts are required, is not to protect the bar ... but to protect the public." People v. Alfani, 227 N.Y. 334, 339 (1919). It is this overarching and legitimate interest in protecting the public against which regulatory action bearing on the instant issues must be measured.

Plaintiff must, but cannot, prove lack of a rational basis in his facial challenge to the Court of Appeals rules which exclude correspondence law-school graduates from sitting for the New York bar examination.  His proposed Amended Complaint fails to adequately plead a violation of a fundamental right, thus making his equal protection claim subject to the same deferential rational-basis standard.

---

[2]   The foregoing authorities are not inapposite because they speak of ordinances or  statutes, or legislative action. The New York Court of Appeals has been legislatively delegated broad rule-making authority regulating the admission of attorneys to practice in all the courts of record of the state.  New York Judiciary Law § 53.

POINT II

**PLAINTIFF FAILS TO ADEQUATELY ALLEGE A VIOLATION OF A FUNDAMENTAL RIGHT.**

Defendants argued (see their Memorandum of Law In Support of Defendants Motion to Dismiss, pages 18-19) and continue to argue that the plaintiff has failed to plead sufficient facts to state a violation of his First Amendment right to free speech or free association. Plaintiff's attempts to raise a First Amendment violation in his equal protection claim. Implicitly he concedes that, without implicating the denial of a fundamental right to such speech, his equal protection claim rises or falls under the deferential  "rational basis" standard.   By alleging that the defendants "violate Plaintiff's right to equal protection of the laws, in the exercise of Plaintiff's freedom of speech and associative rights contrary to the First and Fourteenth Amendments" he seeks to raise the level of equal protection analysis to "strict scrutiny."   His effort fails for the following reasons and the Court should apply "rational basis" analysis to the plaintiff's equal protection claim.

**1.  The Plaintiff Fails To State A Violation of The Freedom of Speech Clause.**

As a threshold matter, a party alleging violation of free speech rights under the  First Amendment must show that the challenged government action actually regulates protected speech. Cablevision Systems Corp. v. F.C.C., 570 F.3d 83, 96 (2d Cir. 2009).  Thus, in Turner Broadcast System, Inc. v. F.C.C., 512 U.S. 622 (1994) the Court found it necessary to establish, as an "initial premise," that "[c]able programmers and cable operators engage in and transmit speech," and that "the must-carry rules," in general, "regulate cable speech." 512 U.S. at 636. Similarly, the plaintiff  here must articulate *how* the Court of Appeals rules  "interferes with [his] speech rights." Time Warner Entm't Co. v. F.C.C., 240 F.3d 1126 at 1129 (D.C. Cir. 2001).

8

This threshold requirement serves two interrelated functions: (i) without a plausible allegation that the challenged rules interfere with First Amendment rights, a reviewing court has neither a reason nor the ability to subject the conduct of the governmental actor to heightened scrutiny;  and (ii) without understanding how a regulation burdens speech, a court cannot decide whether that burden is "no greater than is essential" to further the goals of the regulation in question. See United States v. O'Brien, 391 U.S. 367, 377  (1968).

Without a doubt, First Amendment rights can be at stake during a bar admission process. For example, in Baird v. State Bar of Arizona, 401 U.S.1 (1971) applicants had been denied admission to practice law solely because they refused to answer questions about their personal beliefs or their affiliations with organizations that advocate certain ideas about government. Because of that refusal, the Arizona Supreme Court denied applicants' petitions for admission to practice law in Arizona courts. The United States Supreme Court held that an applicant to state bar was protected by the First Amendment from being required to answer questions concerning whether she had ever been a member of the Communist Party or any organization that advocates overthrow of United States government by force or violence, and that it was error to refuse to process her application and not admit her to bar where record was barren of anything tending to show that applicant was not morally and professionally fit.  See also:  Application of Stoler, 401 U.S. 23  (1971);  but see: Law Students Research Council, Inc. v. Wadmond, 401 U.S. 154 (1971) (no violation of First Amendment rights by New York statute and Character and Fitness Committees rules and screening procedures).

But such is not the case here.  The challenged rules do not implicate speech.  They require one pedagogical model of law study over another.   Such preference is not based upon the content of the instruction provided in any of the models for legal instruction, but on the

9

manner in which that instruction is carried out.  Plaintiff's words (or his refusal to speak as in

Baird) have nothing to with his eligibility to sit for the New York bar examination.  Whatever

may be the plaintiff's rights of free speech, they were not infringed upon when he was excluded

from the New York bar examination by reason of the pedagological model employed by the

school awarding his law degree.

**2.  Plaintiff Fails To State A Violation of the Freedom of  Association Clause.**

The Constitution does not "require that because a lawyer has been admitted to the bar of

one State, he or she must be allowed to practice in another." Leis v. Flynt, 439 U.S. 438, 443,

(1979) (per curiam).

> There is no right of federal origin that permits such lawyers to appear in state
> courts without meeting that State's bar admission requirements. The Supreme
> Court, on several occasions, has sustained state bar rules that excluded
> out-of-state counsel from practice altogether or on a case-by-case basis. See
> Norfolk & Western R. Co. v. Beatty, 423 U.S. 1009, 96 S.Ct. 439, 46 L.Ed.2d 381
> (1975), summarily aff'g 400 F.Supp. 234 (SD Ill.); Brown v. Supreme Court of
> Virginia, 414 U.S. 1034, 94 S.Ct. 533, 38 L.Ed.2d 327 (1973), summarily aff'g
> 359 F.Supp. 549 (ED Va.). Cf. Hicks v. Miranda, 422 U.S. 332, 343-345, 95 S.Ct.
> 2281, 2288-2289, 45 L.Ed.2d 223 (1975). These decisions recognize that the
> Constitution does not require that because a lawyer has been admitted to the bar
> of one State, he or she must be allowed to practice in another. See Ginsburg v.
> Kovrak, 392 Pa. 143, 139 A.2d 889, appeal dismissed for want of substantial
> federal question, 358 U.S. 52, 79 S.Ct. 95, 3 L.Ed.2d 46 (1958).

Leis, 439 U.S. 438, 443.  Arguments similar to those of  the plaintiff were asserted and

rejected in Gordon v. Davenport, 2009 WL 322891 (N.D.Cal. 2009).  The district court found

that the defendants' rules did not force plaintiff to associate with an ABA-accredited school, and

they did not violate his right of non-association. Plaintiff's First Amendment claims were

dismissed without leave to amend.  Id at * 8.

In <u>Paciulan v. George</u>, 229 F.3d 1226 (9th Cir. 2000), <u>cert. denied</u>,  531 U.S. 1077 (2001), plaintiff attorneys, California residents who were licensed to practice law in states other than California,  brought action against Justices of California Supreme Court and individuals from State Bar of California, challenging the constitutionality of a state court rule limiting *pro hac vice* admission to nonresidents licensed in other states.   The attorneys argued that restrictions on their ability to gain *pro hac vice* status infringed on their First Amendment rights in three respects: by limiting their speech on behalf of their clients, by preventing them from freely associating with clients and other attorneys,  and by restricting their ability to petition for redress of grievances.   These arguments were rejected by the circuit court.

> Under Appellants' sweeping formulation of the First Amendment, any regulation of bar membership would be deemed unconstitutional. No case has ever suggested that states are constitutionally barred from regulating admission to their respective bars. Rather, as noted above, states traditionally have enjoyed the sole discretion to determine qualifications for bar membership. See Leis, 439 U.S. at 442, 99 S.Ct. 698 ("Since the founding of the Republic, the licensing and regulation of lawyers has been left exclusively to the States and the District of Columbia within their respective jurisdictions. The States prescribe the qualifications for admission to practice and the standards of professional conduct.")

229 F.3d 1230.

## POINT III

### UNDER RATIONAL BASIS ANALYSIS, PLAINTIFF FAILS TO STATE A VIOLATION OF THE EQUAL PROTECTION CLAUSE.

The plaintiff alleges in his proposed Amended Complaint that 22 NYCRR 520.3 and 520.5(a)(5) deny him equal protection in violation of the First and Fourteenth Amendments because they prohibit him, a graduate of a correspondence law school, from taking the New York

State bar examination.[3]  Proposed Amended Complaint, ¶ 3.  He further maintains that the rules violate his right to equal protection in the exercise of his freedom of speech and association and that the rules will be unable to satisfy the "requisite test of heightened scrutiny," thereby violating plaintiff's right to equal protection.  Proposed Amended Complaint ¶ 12.

The equal protection clause commands that "all persons similarly circumstanced shall be treated alike." F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." Tigner v. Texas, 310 U.S. 141, 147 (1947). The initial discretion to determine classifications resides with the states and they "must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill." Pyler v. Doe, 457 U.S. 202 (1982). Therefore, in applying the equal protection clause "to most forms of state action, we ... seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose." Id.  Contrary to plaintiff's assertion that this Court must apply "heightened" scrutiny to 22 NYCRR 520.3 and 520.5(a)  and the defendants' decision to set minimum qualifications to sit for the New York bar examination, equal protection review of the bar-eligibility criteria at issue

---

[3]  According to the National Conference of Bar Examiners and the ABA Section of Legal Education and Admission to the Bar, 20 jurisdictions limit qualification for their bar examinations to graduates of ABA-approved law schools.  Of the jurisdictions that recognize unapproved law schools, only three allow correspondence study (California, the District of Columbia and New Mexico).  No jurisdiction, not even California, allows a graduate of a correspondence school to immediately qualify for its bar examination.  Each jurisdiction places further education, examination, or practice requirements on such graduates (see Comprehensive Guide to Bar Admission Requirements 2010; www.ncbex.org/fileadmin/mediafiles/downloads /Comp_Guide/CompGuide_2010.pdf.).   While in 2008 Massachusetts  allowed to sit for its bar examination, and in 2009 admitted a correspondence law-school graduate, such action only reinforces the principle that bar admission decisions are matters for state officials to determine, and are not, absent extraordinary circumstances  not present here (cf. Baird, supra), matters of federal constitutional rights.

is governed by the "rational relation" standard. <u>Schware v. Board of Bar Examiners</u>, 353 U.S. 232, 239 (1957) (dictum); <u>Shapiro v. Cooke</u>, 552 F.Supp. 581, 586 (N.D.N.Y.1982) (Miner, J.), aff'd, 702 F.2d 46 (2d Cir.1983) (per curiam).

Defendants have already demonstrated that plaintiff's right to free speech and free association, the fundamental rights he claims are violated, are not infringed upon by the challenged rules, and thus "strict scrutiny" is inapplicable.[4]  Point II, <u>supra</u>.

There are limited instances in which the Supreme Court has designated a classification as "quasi-suspect" and required a level of scrutiny falling somewhere between rational basis review and strict scrutiny. <u>See</u> <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 440-441 (1985); and <u>Ramos v. Town of Vernon</u>, 353 F.3d 171, 175 (2d Cir.2003) (citing <u>Clark v. Jeter</u>, 486 U.S. 456, 461 (1988)). In such "intermediate scrutiny" cases, a statute is upheld if it bears a substantial relationship to an important government interest. <u>Cleburne</u>, 473 U.S. at 441. Individuals belong to "quasi-suspect" classes if they have been the victims of discrimination based on a characteristic beyond their control which bears "no relation to [their] ability to participate in and contribute to society." <u>Cleburne</u>, 473 U.S. at 440-41 (internal quotation marks omitted).

---

[4]  The Supreme Court has referred to the practice of law as a "fundamental right." <u>Supreme Court of New Hampshire v. Piper</u>, 470 U.S. 274, 281(1985). Several circuits have distinguished this isolated reference (which was made in a different analytical context) and reiterated the long-held belief that strict scrutiny in bar-admissions cases is not warranted on a fundamental-right theory. <u>Nordgren v. Hafter</u>, 789 F.2d 334, 338 n. 2 (5th Cir.) (per curiam), <u>cert. denied</u>, 479 U.S. 850  (1986).  <u>See also</u> <u>Lupert v. California State Bar</u>, 761 F.2d 1325, 1328 n  2 (9th Cir. 1985) ("There is no basis in law for the argument that the right to pursue one's chosen profession is a fundamental right for the purpose of invoking strict scrutiny under the Equal Protection Clause. U.S. Const. amend. XIV. <u>Supreme Court of New Hampshire v. Piper</u>, 470 U.S. 274, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985), is distinguishable because it involved only the Article Four 'Privileges and Immunities' Clause, U.S. Const. art. IV, § 2, cl. 1, not the Equal Protection Clause, 105 S.Ct. at 1277.") and <u>Schumacher v. Nix</u>, 965 F.2d 1262, 1268 n 9 (3d Cir. 1992) ("Plaintiffs have not alleged that any other fundamental right is impinged by Rule 203(a)(2)(ii). We note, however, that 'the right to practice law is not a fundamental right for purposes of ... equal protection analysis'" quoting <u>Edelstein v. Wilentz</u>, 812 F.2d 128, 132 (3d Cir.1987)).

Plaintiff's equal protection argument is not based on his having an immutable characteristic, nor his being a member of a group traditionally subjected to mistreatment (Proposed Amended Complaint, passim). Accordingly, neither heightened nor intermediate scrutiny applies to his equal protection claim. See Frazier v. Heebe, 788 F.2d 1049, 1053 (5th Cir.1986) overruled on other grounds, 482 U.S. 641  (1987); see also Baccus v. Karger, 692 F. Supp. 290, 293 n. 7 (S.D.N.Y.1988) ("strict scrutiny in bar-admissions cases is not warranted on a fundamental-right theory") and Schoenefeld v. New York, 2010 WL 502758 (N.D.N.Y. 2010) (challenging on, among others, equal protection basis, New York Judiciary Law § 470's in-state office requirement for attorneys). Thus, the Court need only inquire as to whether the restrictions contained in 520.3 and 520.5(a) are rationally related to a legitimate governmental purpose. See Shapiro v. Cooke, 552 F. Supp. 581, 586 (N.D.N.Y.1982).

**1.  Application of the Rational Relation Standard.**

"A state can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law." Schware, 353 U.S. at 239.   Moreover, when applying the rational basis test, this Court is free to uphold a classification based upon "a[ny] state of facts that reasonably can be conceived to constitute a distinction or difference in State policy ...." Allied Stores v. Bowers, 358 U.S. 522, 530 (1959). Many courts that have considered equal protection challenges to state bar rules have applied rational basis review. See, e.g.,  Nordgren v. Hafter, 789 F.2d 334 (5th Cir. 1986), cert. denied, 479 U.S. 850 (1986); Lupert v. California State Bar, 761 F.2d 1325 (9th Cir. 1985), cert. denied and appeal dismissed, 474 U.S. 916 (1985);  Salibra v. Supreme Court of Ohio, 730 F.2d 1059

14

(6th Cir. 1984), cert. denied, 469 U.S. 917 (1984); Lowrie v. Goldenhersh, 716 F.2d 401 (7th Cir.1983).

The Supreme Court repeatedly has emphasized that the contours of analysis under the rational relation standard provide local regulators with wide latitude and flexibility. Accordingly, the constitutionality of the restrictions at issue is presumed, and they will be struck down only if they are found to be "wholly arbitrary." City of New Orleans v. Dukes, 427 U.S. 297, 303-04 (1976) (per curiam). Accord City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 440 (1985). Such deference is particularly appropriate here since regulation of the practice of law traditionally has rested within the purview of the States since the founding of the Republic. Leis v. Flynt, 439 U.S. 438, 442 (per curiam), reh'g denied, 441 U.S. 956 (1979). In a case governed by the rational relation standard, a court may look beyond the proffered justifications and craft its own in seeking to save the governmental regulation at issue. McGowan v. Maryland, 366 U.S. 420, 426 (1961).

Indeed, consistent with this deferential standard, courts have upheld a wide variety of bar-admission restrictions. See, e.g., Nordgren v. Hafter, supra, (upholding Mississippi rule denying bar admission to graduates of out-of-State, non-ABA-accredited law schools, even though similar restriction did not apply to graduates of in-State, non-ABA-accredited schools); Jones v. Board of Comm'rs, 737 F.2d 996, 1001-02, reh'g denied, 745 F.2d 72 (11th Cir.1984) (upholding Alabama rule limiting to five the number of times an individual may sit for the bar examination); Lowrie v. Goldenhersh, supra at 409-10 (upholding Illinois rule allowing admittance of foreign-licensed attorneys only if applicant has resided and actively practiced law in the outside jurisdiction for five of the seven years immediately preceding application).

15

One of the rules under review here, 22 NYCRR 520.5(a),  excludes from the bar examination anyone who attended a law school that grants credit for correspondence courses. The other challenged rule, 22 NYCRR 520.3 [Study of law in law school],  requires approved American law school study to contain at least 1,120 hours of <u>classroom</u> study (22 NYCRR 520.3 (c) (1)(ii)), and prohibits the granting of credit for correspondence courses.  22 NYCRR 520.3 (c)(3).  These  rules --  and others in the Court of Appeals rules for bar admission-- require the in-person study of law under the direct supervision of qualified teachers.[5]  The same cannot be said of  correspondence courses where there is less assurance that work being performed as part of the study is actually done by the enrolled student.  The New York rules require law study under direct, in-person supervision,  and restricts from eligibility for taking the bar examination those, like the plaintiff, who studied law at correspondence law schools.[6]  As the New York Court of Appeals rationally concluded long ago, "The reason why preparatory study, educational qualifications, experience, examination and license by the courts are required, is not to protect the bar ... but to protect the public." <u>People v. Alfani</u>, 227 N.Y. 334, 339 (1919).  It is this overarching  and  legitimate  interest  in  protecting  the  public  against  which  regulatory  action

---

[5]  "Perhaps more than other academic disciplines, legal education employs a pedagogy highly dependent on personal encounters between the student, the instructor, and the other students. The traditional "Socratic method" of teaching, where the instructor poses a series of questions to individual students, is still revered and practiced at many law schools. [footnote omitted ] It is this intense "Socratic" interaction between student and teacher that is thought to train students in spontaneous oral analysis and argument. [footnote omitted ] Interaction among students and faculty outside the classroom is also valued as an integral part of legal education. [footnote omitted ] Distance learning technologies used in academia, however, separate students and teachers from each other both in space and time. The relatively inexpensive asynchronous distance learning technologies, such as e-mail and Internet communication, thus appear to fall short of the learning community valued in law school pedagogy." Leskovac, *Distance Learning in Legal Education: Implications of Frame Relay Videoconferencing*, 8 Albany Law Journal of  Science and Technology 305, 310-311 (1998).

[6]  New York rules permit some clinical study as part of an acceptable juris doctorate degree with some restrictions [22 NYCRR 520.3 (c)(5)], and the combined  study of law in law school and in a law office [22 NYCRR 520.4].  But these alternatives to traditional 3 year class room course of study are also predicated on close, in-person supervision of the law student by a person or persons already trained in the law.

16

bearing on the instant issues must be measured.   Consistent with <u>Alfani</u>, there can be no doubt that disqualifying those bar applicants who studied the law through correspondence  is rationally related to the State's legitimate interest in protecting the public from the vicissitudes of an incompetent bar.   <u>See</u>   <u>In re Griffiths</u>, 413 U.S. 717, 722-23 (1973) (acknowledging State's "constitutionally permissible and substantial interest" in assessing a bar applicant's general fitness).

**2.  "Class of One" Equal Protection Claim.**

The Supreme Court has held that a plaintiff need not be a member of a traditionally protected class in order to allege an equal protection violation,  but may bring a claim as a "class of one" where it is alleged that he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." <u>Willowbrook v Olech</u>, 528 U.S. 562, 564 (2000).  Class-of-one plaintiffs, however, "must show an <u>extremely high degree of similarity</u> between themselves and the persons to whom they compare themselves." <u>Clubside, Inc. v Valentin</u>, 468 F.3d 144, 159 (2d Cir. 2006) (emphasis added). Plaintiff fails to allege a "class of one" equal protection claim.  A plaintiff raising a selective treatment claim must show that he was treated differently from other similarly-situated individuals and that the differential treatment was based on impermissible considerations. <u>See Skehan v. Village of Mamaroneck</u>, 465 F.3d 96, 110 (2d Cir.2006), <u>overruled on other grounds by Appel v. Spiridon</u>, 531 F.3d 138 (2d Cir.2008).  Here the plaintiff  does not allege that he is being treated differently from others who are similarly situated;  he has failed to identify a single individual with whom he can be compared for equal protection purposes. On the contrary he appears to allege that he and all other correspondence law school graduates are being treated

17

alike: such correspondence law school study does not qualify them to sit for the New York bar examination.  As a result, this claim is wholly deficient and should be dismissed.

The restrictions embodied in 22 NYCRR 520.3 and 520.5(a) are rationally related to the State's desire to protect the public from ill-trained attorneys.  It thus passes equal protection scrutiny under the rational basis test which is the appropriate standard with which to judge the rules at issue.  Plaintiff fails to state a "class of one" equal protection claim.  Accordingly, plaintiff's motion for leave to file and Amended Complaint should be denied as futile.

## CONCLUSION

Plaintiff's motion to amend should be denied and his Complaint dismissed.  His proposed Amended Complaint does not pass FRCP 12(b)(6) scrutiny and thus it would be futile to permit him to file it.  Plaintiff's facial challenges in the Amended Complaint to the Court of Appeals rules are meritless.

Dated:  Albany, New York
            April 28, 2010

                                        ANDREW M. CUOMO
                                        Attorney General of the State of New York
                                        Attorney for Defendants John J. McAlary, and
                                             Hons. Jonathan Lippman, Carmen
                                             Beauchamp Ciparick, Victoria A. Graffeo,
                                             Robert S. Smith, Theodore T. Jones,
                                             Susan P. Read and Eugene F. Pigott, Jr.
                                        The Capitol
                                        Albany, New York  12224-0341
                                        By: s/ *Stephen M. Kerwin* , B/R # 103129
                                             Stephen M. Kerwin
                                        Assistant Attorney General, of Counsel
                                        Bar Roll No. 103129
                                        Telephone:  (518) 473-7184
                                        Fax: (518) 402-2221 (Not for service of papers)
                                        Email: stephen.kerwin@ag.ny.gov

18

TO:   Frank Bazadier
      Plaintiff pro se
      P.O. Box 861503
      Los Angeles, California 90086-1503